UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIC TYLER,

    Petitioner,

  v.

GREGORY GOSSETT, Warden,

    Respondent.

No. 13 CV 5006

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Eric Tyler is serving an 18-year sentence in state custody for armed robbery. At his trial, the state used bloodhound tracking evidence to establish (in part) Tyler's guilt, and Tyler's lawyer did not object to its admissibility. This evidence was not admissible under Illinois law, and Tyler now petitions for a writ of habeas corpus. 28 U.S.C. § 2254. As discussed below, the state appellate court reasonably applied federal law in reviewing the constitutional effectiveness of Tyler's trial counsel and resolved the evidentiary error on an independent and adequate state law ground. The petition is denied, and I decline to issue a certificate of appealability.

**I.    Background**

Three people, dressed in dark, hooded sweatshirts, masks, and gloves, robbed a Clark gas station in Joliet, Illinois, on September 9, 2008, around 4:15 a.m. *People v. Tyler*, 2012 IL App (3d) 100970, 363 Ill.Dec. 166, 167–69 (3d Dist. 2012); [11-1] at

3–4.[1] Ira Tyler and Willie Campbell were each convicted of the robbery; the state's theory was that their cousin, petitioner Eric Tyler, was the third man.

Two people were working at the gas station that early morning when the robbers approached. One robber put a gun to the head of one victim and took his keys, while the other two robbers locked the second victim in a storage shed. The robbers took the first victim to the front of the station, held him at gunpoint, and stole about $295 in small denominations from the cash register.

The victim in the shed was able to call the police on his cell phone while the robbery was in progress, and officers responded to the scene in time to see three men fleeing from the gas station on foot. Ira Tyler was caught after he tripped and fell while running away; he had a gun in his waistband. The other two men kept running. Using a bloodhound, an officer tracked a scent from the gas station to the backyard of a residence at 1103 West Marion Street, Joliet, Illinois.[2] Ira Tyler had given that address as his residence to the officer who arrested him. According to one officer, the police ended up at 1103 West Marion (shortly after 6 a.m.) because a dog tracked a scent there and because it was the address of the individual in custody.

---

[1] Citations to the record are designated by the document number on the district court docket, placed in brackets. The cited page numbers are from the CM/ECF header placed at the top of electronically filed documents. Unless otherwise noted, all facts concerning the trial and appeal are taken from the Illinois Appellate Court's ruling on petitioner's direct appeal. That court was the last state court to pass on the merits. Therefore, the facts related in its decision are presumed to be correct. *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). I note that the appellate court referred to one witness, Officer Shawn Wascher, using male pronouns, but according to the trial transcript, Officer Wascher is female.

[2] The residence was about one block south and one block east of the gas station. *See* [11-12] at 80 (gas station located at 1160 W. Jefferson, Joliet, Illinois).

Officers searched the residence (with the consent of Ira Tyler's mother) and found petitioner Eric Tyler in a bed in the basement. There was a black hooded sweatshirt on the bed. A cell phone found next to petitioner was ringing, and the name "Bridgette" was on the display.[3] Petitioner did not live there—the basement bedroom belonged to Ira Tyler's brother. Elsewhere in the basement, in the cushions of a couch, the police found a large wad of cash ($477 in small bills). A pair of black and white gloves behind the couch had the DNA of three people on it, and petitioner could not be excluded as a possible source of the DNA. Outside, in an alley behind the house, officers found Willie Campbell. Campbell was wearing dark clothing, including a hooded sweatshirt, and was muddy.

At petitioner's trial, Ira Tyler testified that he did not remember the robbery and did not plan it with petitioner. Campbell testified that he committed the robbery with Ira Tyler only. After his arrest, Campbell told the police that petitioner was involved, but at trial, Campbell recanted those statements. When asked at trial if petitioner participated in the robbery, Campbell said, "Not that I know of."

A jury found petitioner guilty.

A. **Federal Habeas Standards**

Petitioner unsuccessfully appealed his conviction through the state courts, and his state post-conviction petition was also denied. [11-1], [11-6], [11-8]. Federal

---

[3] Bridgette Cullum testified that she was Campbell's girlfriend and that she called Campbell's cell phone that morning looking for him.

review of these state-court decisions is limited.[4] With respect to a state court's determination of an issue on the merits, habeas relief can be granted only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 783–84 (2011).

"When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) (citing *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)); *see also Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). Claims resolved on an independent and adequate state law ground are considered procedurally defaulted, and procedural default can be excused only if the petitioner can show both cause for and prejudice from the default or can demonstrate that the failure to consider the claim would result in a fundamental miscarriage of justice. *Richardson*, 745 F.3d at 268, 272.

## B. State Court Proceedings

Petitioner appealed his conviction to the Illinois Appellate Court, and raised two issues: (1) that he was denied due process and a fair trial by the admission of the bloodhound evidence; and (2) his trial counsel was constitutionally ineffective

---

[4] The respondent does not dispute that petitioner has pursued all available state court remedies and that his § 2254 petition is timely. [10] at 12.

4

for failing to object to the bloodhound evidence. [11-2]. The Illinois Appellate Court affirmed the conviction (over a dissent), and held that: (1) Tyler forfeited his evidentiary objection and the erroneous admission of the bloodhound evidence was not a plain error because the evidence against him was not closely balanced; and (2) trial counsel's failure to object to the bloodhound evidence did not prejudice Tyler within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984). [11-1].

The dissenting justice would have reversed Tyler's conviction. In his view, the evidence against Tyler was far from overwhelming—there was no physical evidence from the scene of the robbery implicating petitioner and the two co-defendants exculpated him. The prosecution's repeated references to the bloodhound evidence in closing argument suggested that it was particularly important to the state, and therefore as the dissent viewed the record, the bloodhound evidence was the "cornerstone" of the prosecution's case. [11-1] at 9–11. The dissenting justice believed that the admission of the evidence was plain error and trial counsel's failure to object amounted to ineffective assistance of counsel. *Id.*

After the Supreme Court of Illinois denied leave to appeal, *see* [11-6], Tyler filed a pro se post-conviction petition in the state trial court. In that petition, Tyler did not raise any issues concerning the bloodhound evidence; instead, he raised a claim of ineffective assistance of counsel based on his trial counsel's failure to introduce evidence of the clothing worn by petitioner at the time of his arrest. [16-7]. The state court denied the petition. [16-8]. Petitioner alleges that he filed a

5

notice of appeal from that decision, [1] at 3, but the docket for his state court case does not reflect any notice of appeal having been filed. [11-15] at 23.

### C. Tyler's Federal Habeas Petition

In his federal habeas petition, Tyler raises two claims. First, he alleges that his trial counsel was ineffective for failing to object to the admission of the bloodhound tracking evidence. Second, he claims that the admission of the tracking evidence violated due process. [1] at 4–5.[5] Both claims were presented to the Illinois Appellate Court in Tyler's direct appeal.

## II. Ineffective Assistance of Counsel in Failing to Object to Bloodhound Evidence

Bloodhound tracking evidence is "inadmissible to establish any factual proposition in a criminal proceeding in Illinois." *People v. Cruz*, 162 Ill.2d 314, 370 (1994); *People v. Pfanschmidt*, 262 Ill. 411, 461 (1914). The Illinois rule is a minority one. *See Cruz*, 162 Ill.2d at 370; *see also United States v. Renken*, 474 F.3d 984, 989 (7th Cir. 2007) (Illinois is an exception to the majority of jurisdictions that allow bloodhound tracking evidence); *see e.g.*, *United States v. Hornbeck*, 63 Fed. App'x 340, 342 (9th Cir. 2003) (no abuse of discretion in admitting canine tracking evidence under Federal Rules of Evidence).

Petitioner's trial counsel did not object the bloodhound evidence, and on appeal, Tyler argued that counsel was ineffective. Citing *Strickland*, the Illinois

---

[5] Tyler used a preprinted form for petitions under § 2254, and his assertions concerning his second ground for relief stretch across the sections of the form for Grounds Three and Four. *See* [1] at 5. But the substance of the allegations amount to a single ground for relief— namely, that the state's use of the bloodhound evidence deprived Tyler of due process.

Appellate Court determined that the failure to object did not prejudice Tyler. [11-1] at 9. Tyler faces a significant hurdle under these circumstances because a federal court can grant relief under § 2254 only if the state court's application of federal law was unreasonable, and that highly deferential review is "doubly so" when paired with *Strickland*. *Harrington*, 131 S.Ct. at 788.

The state court properly cited *Strickland* and described the applicable test. It assessed the strength of the prosecution's case and concluded that the outcome of the trial would not have been different if defense counsel had challenged the bloodhound tracking evidence. Reasonable jurists could disagree about that conclusion. As the dissent pointed out, tracking a scent from the scene of the crime to the residence at 1103 West Marion Street was a significant piece of evidence linking Tyler to the crime—the prosecution explicitly linked the bloodhound and Tyler's guilt in closing argument. *See* [11-13] at 175 ("Well, that leaves the third guy. Who is the third guy? Well, the third guy is Eric Tyler. You have a bloodhound who comes out to the scene. They set up the perimeter, make sure no one's coming or going. The bloodhound, where does he go? Right to 1103 West Marion Street, right to the backyard. Right in the backyard, the door right there that goes to the basement right in front of him when they get there."). But this debatable point does not justify federal habeas relief, because ultimately, the state court is entitled to deference in its application of *Strickland* even if not every judge would agree with it. *See Richardson*, 745 F.3d at 277.

The state court's application of *Strickland*'s prejudice prong was reasonable, albeit debatable, and therefore, Tyler's ineffective assistance of counsel claim fails.[6]

### III. Due Process and the Admission of Bloodhound Evidence

Petitioner next argues that the admission of the bloodhound evidence violated due process and the right to a fair trial. On direct appeal, Tyler conceded that he failed to preserve an objection to the bloodhound evidence, and the Illinois Appellate Court reviewed this claim for plain error. [11-1] at 8.

When the state court resolves an issue on the basis of a failure to contemporaneously object, it usually finds the claim waived, and that is an independent and adequate state law ground; the claim is then procedurally defaulted for federal habeas review. *Richardson*, 745 F.3d at 268; *Aliwoli v. Gilmore*, 127 F.3d 632, 634 (7th Cir. 1997). In this case, the Illinois Appellate Court determined that the claim was forfeited and engaged in plain-error review. The application of forfeiture and plain error by the state court is also an independent and adequate state law ground. *See Smith v. McKee*, 598 F.3d 374, 383 (7th Cir.

---

[6] Respondent also argues that trial counsel's performance was not deficient. The state court did not address the performance prong of *Strickland*. *See* [11-1] at 9. Therefore, § 2254(d) deference does not apply, and review is de novo. *See Woolley v. Rednour*, 702 F.3d 411, 422 (7th Cir. 2012). Trial counsel used the bloodhound evidence affirmatively (and therefore perhaps made a tactical decision within the bounds of professional competence), when she argued that the bloodhound stopped at the backyard and did not alert at the house itself. Defense counsel argued that the dog was following Campbell's sent (Campbell was found outside), not petitioner's. [11-13] at 198–99. But this argument assumed the bloodhound evidence was admissible in the first place, and does not provide an explanation for failing to object. At the time of the trial, bloodhound evidence had been inadmissible for nearly one hundred years in Illinois. Reviewing this aspect of ineffective assistance of counsel de novo, trial counsel's failure to object was deficient performance. But as discussed above, petitioner cannot overcome the deference owed to the state court's determination of *Strickland* prejudice, and therefore an assessment of trial counsel's performance is irrelevant.

8

2010). The appellate court's plain-error review was an application of state law procedure to determine whether to forgive the forfeiture. [11-1] at 8. The court noted that "to obtain plain-error review of a forfeited error" a defendant must show that the evidence was close. *Id*. It then concluded that the evidence was not close in this case. *Id*. In other words, the court declined to review the claim in a manner that preserved the claim for federal review. *See Smith*, 598 F.3d at 383 (review to determine whether to set aside forfeiture was not sufficiently interwoven with merits of federal claim); *Rodriguez v. McAdory*, 318 F.3d 733, 736 (7th Cir. 2003) (plain-error review was entangled with, but not entirely dependent on the merits). Tyler's due process/fair trial claim concerning the bloodhound evidence was procedurally defaulted.

In his petition, Tyler does not offer any cause to explain this procedural default. He also has not cleared the "extremely high bar" set by the fundamental miscarriage of justice standard. *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013). That standard excuses a procedural default only in the rare case where the petitioner can prove that he is actually innocent of the crime with new, reliable evidence. *McDowell*, 737 F.3d at 483 (citing and quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). There is no new evidence here. Therefore, petitioner's procedural default precludes federal review of his claim.

I note, however, that meritorious claims of ineffective assistance can excuse a procedural default. *Brown v. Watters*, 599 F.3d 602, 609 (7th Cir. 2010) (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)); *Richardson*, 745 F.3d at 272. "To

establish ineffective assistance sufficient to excuse a procedural default, a petitioner must satisfy the familiar two-part test from *Strickland* . . . . He must show that counsel's performance was objectively deficient and that the deficient performance prejudiced his case." *Richardson*, 745 F.3d at 272.

I agree with the Illinois Appellate Court's majority, and conclude that Tyler was not prejudiced by his attorney's failure to object to the bloodhound evidence. Petitioner was found within two hours of the robbery, shortly after 6 a.m., in Ira Tyler's home, next to Willie Campbell's cell phone and a black hooded sweatshirt. Petitioner did not live there, and Ira Tyler's mother was surprised he was in the house. A jury could reasonably infer that the cash in the cushions came from the robbery and neither Ira Tyler nor Willie Campbell made it back to the house after the robbery. The victims described the robbers as two lean men and one larger man, and both petitioner and Campbell were slender (Ira Tyler was larger). The co-defendants' attempts to exculpate petitioner no doubt undermined the strength of the state's case, but an examination of the trial record as a whole reveals that the outcome of the trial would not have been different without the bloodhound evidence. Trial counsel should have objected to the evidence, but that deficient performance did not prejudice Tyler. Therefore, there is no cause to excuse the procedural default of petitioner's due process claim, and the petition is denied.[7]

---

[7] Even if a federal court could review the merits of the due process claim, the claim would be unsuccessful. The erroneous admission of evidence under state rules "is no concern of" the federal courts "unless it is so egregiously prejudicial as to implicate constitutional principles." *Richardson*, 745 F.3d at 275. In this case, bloodhound evidence does not violate fundamental conceptions justice such that its admission violates the Constitution. With a

## IV. Certificate of Appealability

A certificate of appealability may issue only if Tyler has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "The prisoner need not show he is likely to prevail, but he must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quotation omitted). Although reasonable jurists can debate the strength of the case against Tyler without the bloodhound evidence, the resolution of his federal habeas petition is determined by settled precedent and further appeal is not warranted. I decline to issue a certificate of appealability.

## V. Conclusion

The petition for a writ of habeas corpus is denied, and no certificate of appealability shall issue. The clerk shall enter judgment in favor of the respondent.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 1/5/15

---

proper foundation, the evidence is admissible in most jurisdictions, including federal court. Illinois's idiosyncratic approach does not provide a basis for federal habeas corpus relief.